**UNITED STATES of America ex rel. George DUKES, Appellant,**

v.

**Walter M. WALLACK, Warden, Walkill State Prison, Walkill, New York, Appellee.**

**No. 647, Docket 32132.**

United States Court of Appeals Second Circuit.

Argued June 12, 1969.

Decided July 25, 1969.

Charles A. Stillman, New York City (Botein, Hays, Sklar & Herzberg, New York City,), for appellant.

Hillel Hoffman, Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, N. Y., and Samuel A. Hirshowitz, First Asst. Atty. Gen., State of New York, on the brief), for appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

MOORE, Circuit Judge:

Appellant George Dukes and two co-defendants were convicted on May 3, 1965 of robbery in the first degree (two counts), assault in the second degree (one count), and grand larceny in the first degree (one count) by the County Court of Monroe County (Ogden, Judge), after a trial by jury. On May 18 appellant was sentenced to concurrent terms of 10 to 20 years on the robbery counts and to lesser concurrent terms on the other counts. The conviction was unanimously affirmed without opinion by the Appellate Division, Fourth Department (People v. Dukes, 25 A.D.2d 718, 269 N.Y.S.2d 968) and leave to appeal to the New York Court of Appeals was denied on May 20, 1966 (Desmond, Chief Judge).

On December 8, 1964 appellant Dukes was arrested in a Rochester bar. He was alleged to have participated with two other men in a mugging, two weeks previously. He was brought to the station house at 8:30 p. m. and questioned until 11:00 p. m. He was not advised of his right to remain silent or of his right to counsel. He asked for an opportunity to speak with his girl friend but was denied that opportunity until after he had finished his statement as to the crimes charged. During the course of that examination, he confessed to his guilt. His co-defendants, Richard Hackley and William Wright, also confessed.

At the trial, Hackley and Wright did not take the stand in their own defense, but their respective confessions were introduced into evidence against them. The confession of Hackley specifically

implicated Dukes but the trial court refused to delete Dukes' name before the confession was read to the jury. Dukes, on the other hand, did take the stand and testified in his own defense. The trial judge gave instructions, cautioning the jury not to consider the confession of one defendant against another.

In other evidence introduced at the trial the complainant, Marion Way, made a positive identification of Dukes and his co-defendants as the three men that had robbed him. There was proof that there had been enough light during the robbery for the assailants' faces to be seen, and on the robbery Way told the police that he would be able to recognize the defendants, since he had seen them on prior occasions at local taverns. Further incriminating evidence included the production of the gun used during the robbery, which Dukes admitted he sold to one Harold Pough.

In this federal habeas corpus proceeding appellant alleged many violations of his constitutional rights but on appeal from the denial of relief by the district court he raises only two points of error: (1) that the admission of his co-defendants' extra-judicial confessions into evidence deprived him of his Sixth Amendment right of confrontation; and (2) that he was unconstitutionally deprived of the assistance of counsel, thereby rendering his confession inadmissible.

As to the first point, appellant seeks to bring his case within the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), held to apply retroactively in Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). *Bruton* holds that the extra-judicial confession of a non-testifying co-defendant may not be introduced into evidence even when limiting instructions are given to the jury. This case, however, is distinguishable from *Bruton* in that Dukes, unlike the defendant in *Bruton*, did himself confess. Recently, in United States ex rel. Catanzaro v. Mancusi, 404 F.2d 296 (2d Cir.

1968), this court, on a similar set of facts, said:

"The reasoning of * * * *Bruton* is not persuasive here * * * [That case] involved a defendant who did not confess and who was tried along with a co-defendant who did. In our case Catanzaro himself confessed and his confession interlocks with and supports the confession of McChesney [the co-defendant].

"Where the jury has heard not only a codefendant's confession but the defendant's own confession no such 'devastating' risk attends the lack of confrontation as was thought to be involved in *Bruton*." 404 F.2d at 300.

■ Furthermore, in view of Dukes' own confession, his taking the stand, the complainant's positive identification and the tracing of the robbery gun to Dukes, the evidence against Dukes was so overwhelming that any possible violation of *Bruton* was harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (June 2, 1969). In one sense, the evidence against Dukes was even more compelling than that in *Harrington*, since the defendant there had merely " * * * made statements which fell short of a confession but which placed him at the scene of the crime." 89 S.Ct. at 1728.

■ Dukes also contends that his confession should have been rendered inadmissible since he was deprived of the assistance of counsel until after the confession was made. Under the then-applicable law, there was no constitutional requirement to warn appellant of his right to counsel since Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) had not yet come down. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), had been decided but the recent case of Frazier v. Cupp, 395 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (April 22, 1969), in which no *Escobedo* violation was found, is more like the case at bar. In *Frazier*, the defendant was not given

access to a lawyer even after he had said "I think I had better get a lawyer before I talk any more." The Supreme Court, in distinguishing *Escobedo*, found that the above request "was neither as clear nor as unambiguous as the request Escobedo made." 89 S.Ct. at 1424. *Frazier* would seem to govern here *a fortiori*, since Dukes never made any request at all for a lawyer but stated merely that he wanted to see his girl friend. While it is true that Dukes claims that the reason he wanted to see his girl friend was to ask her to get him a lawyer, there is no indication that he told the police of such a motive.

Affirmed.